J-S26002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D. F., A/K/A D. A. F., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D. H., MOTHER | No. 3561 EDA 2017 |

Appeal from the Decree Entered October 11, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
CP-51-AP-0000606-2017
CP-51-DP-0002436-2013

| | |
|---|---|
| IN THE INTEREST OF: D. O., A/K/A D. M. L. O., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D. H., MOTHER | No. 3563 EDA 2017 |

Appeal from the Decree Entered October 11, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
CP-51-AP-0000608-2017
CP-51-DP-0002435-2013
FID: 51-FN-004636-2013

| | |
|---|---|
| IN THE INTEREST OF: D. H. F., A/K/A D. A. M. F., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D. H., MOTHER | No. 3565 EDA 2017 |

Appeal from the Decree Entered November 1, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
CP-51-AP-0000607-2017
CP-51-DP-0002474-2013
FIN: 51-FN-004636-2013

J-S26002-18

BEFORE: BENDER, P.J.E., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED JUNE 26, 2018**

D.H. ("Mother") appeals from the decrees entered on October 11, 2017 that granted the petitions filed by the Philadelphia County Department of Human Services ("DHS") to involuntarily terminate her parental rights to D.H.F. (born in October of 2013), D.O. (born in May of 2011), and D.F. (born in July of 2012) (collectively "Children"), pursuant to sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.[1, 2, 3] After careful review of the record and applicable law, we affirm.

The trial court set forth the following findings of fact in its Pa.R.A.P. 1925(a) opinion:

> On December 5, 2013, [DHS] received an Emergency General Protective Services ("EGPS") report alleging Child D.H.F. … was hospitalized. The EGPS report indicated Child [D.H.F.] would be discharged in approximately one week. The [EGPS]

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The parental rights of Children's father, D.A.F., Sr. ("Father"), were termintated by separate decrees entered on the same date. Father is not a party to this appeal.

[2] A guardian *ad litem* (GAL), Lisa Visco, Esq., and a child advocate, Catherine Stewart, Esq., were appointed to represent the best interests and legal interests of Children. Both attorneys participated in the termination hearing.

[3] Permanency review orders were also entered on October 11, 2017, changing the permanency goal for Children to adoption. In her Rule 1925(b) concise statement of errors complained of on appeal, Mother did not specifically challenge the change of the permanency goal to adoption; thus, she has waived that issue on appeal. ***Krebs v. United Refining Co.***, 893 A.2d 776, 797 (Pa. Super. 2006) (holding any issue not raised in a Rule 1925(b) statement is deemed waived)).

- 2 -

report alleged Child [D.H.F.] suffered from severe respiratory distress. Child [D.H.F.] would be sent home with an oxygen tank upon discharge. The EGPS report alleged Child D.O. …, Child D.F. … and Mother visited Child [D.H.F.] at the hospital infrequently. The [EGPS] report alleged Mother had indicated an inability to care for [Child] D.H.F. The EGPS report also alleged Mother was unemployed[,] used drugs[,] and that [Child D.H.F.'s] twin sibling died in the Neonatal Intensive Care Unit ("NICU") one month before[,] in November [of] 2013.

On December 11, 2013, DHS visited Mother's home. During the visit, Mother indicated the home was temporary and she was presently only caring for Child D.F. Child D.H.F. was still in the hospital. Child D.O. was residing with relatives. [DHS] observed the home to be unclean and Mother's chain smoking filled the house with cigarette smoke. On December 11, 2015, DHS obtained an Order for Protective Custody ("OPC") for Children D.O. and D.F. On December 16, 2013, DHS obtained an OPC for Child D.H.F. On December 18, 2013, Children [*sic*] D.O. was adjudicated dependent. On January 8, 2014, Children D.F. and D.H.F. were adjudicated dependent. In September [of] 2016, Mother abducted Child D.H.F. and Child D.F. DHS did not know the whereabouts of Child D.H.F. and Child D.F. until August [of] 2017. Mother did not abduct Child D.O., who remained with his foster parent. The underlying petition[s] to terminate Mother's parental rights to Children [were] filed on May 31, 2017[,] because Mother had not meet [*sic*] her Single Case Plan ("SCP") objectives. [At the termination hearing o]n October 11, 2017, this [c]ourt ruled to terminate Mother's parental rights to the Children pursuant to 23 Pa.C.S.[] § 2511(a)(1)[, ](2)[, ](5)[ and ](8) and found that termination of Mother's parental rights was in the best interests of the Children pursuant to 23 Pa.C.S.[] § 2511(b). Mother filed a notice of appeal as to each child on November 1, 2017.[4]

Trial Court Opinion ("TCO"), 2/16/18, at 2-3 (citations to record omitted).

In her brief, Mother presents the following issues for our review:

---

4 The appeals at 3561, 3563 and 3565 EDA 2017 were consolidated *sua sponte* by *per curiam* order of this Court, as all of these matters involve related parties and issues. Order, 11/21/17.

1. Whether the trial court committed reversible error, when it involuntarily terminated [M]other's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.[] § 2511(a)(1), (2), (5) and (8)[?]

2. Whether the trial court committed reversible error when it involuntarily terminated [M]other's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the children as required by the [A]doption [A]ct, 23 Pa.C.S.[] § 2511(b)[?]

3. Whether the trial court erred because the evidence was overwhelming that [M]other demonstrated a sincere and continued interest in maintaining a parent-child relationship with her children[?]

Mother's Brief at 8.

We review an appeal from the termination of parental rights under the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, … 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, … 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, … 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not

equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, … 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re S.H.*, 879 A.2d 802, 806 (Pa. Super. 2005). We have previously stated:

The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003) (internal quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of

the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interest of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511; other citations omitted).

This Court must agree with only one subsection of 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Herein, we review the decree pursuant to section 2511(a)(1) and (b), which provide as follows:

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)   The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

…

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1) and (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(1). In *In re C.M.S.*, 832 A.2d 457 (Pa. Super. 2003), we noted:

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

*Id.* at 461 (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)). In *C.M.S.*, we further acknowledged the following statement by our Supreme Court:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent "exert himself to take and maintain a place of importance in the child's life[."]

*C.M.S.*, 832 A.2d at 462 (quoting *In re Burns*, 379 A.2d 535, 540 (Pa. 1977)).

Here, Mother claims that she "never evidenced a settled purpose of relinquishing her rights to her children." Mother's Brief at 16. Contrary to Mother's assertion, the trial court found that Mother failed to perform her

parental duties, which established grounds for termination under 23 Pa.C.S. § 2511(a)(1), and stated:

> Child D.O. was born [in] May [of] 2011 and adjudicated dependent [in] December [of] 2013. Child D.F. was born [in] July [of] 2012 and adjudicated dependent [in] January [of] 2014. Child D.H.F. was born [in] October [of] 2013 and adjudicated dependent [in] January [of] 2014. The record clearly reflect[s] Mother's ongoing inability to provide care for or control of the Children and Mother's failure to remedy the conditions that brought the Children into care. Specifically, Mother made insufficient and inconsistent efforts to meet her SCP objectives, which included [c]ourt[-]ordered random drug testing, completing anger management classes and participating in supervised visitation….

TCO at 4-5.

At the termination hearing, Ms. Muniyra Muhammad, an assigned Community Umbrella Agency ("CUA") Representative, testified that Mother's SCP objectives included: obtaining housing, obtaining employment, attending supervised visits with Children, completing a parenting capacity evaluation ("PCE"), and obtaining mental health treatment. N.T. Termination, 10/11/17, at 10-11. According to Mother, she completed the PCE, was compliant with mental health services and random drug testing, is self-employed, and applied for housing in Johnstown, Pennsylvania. *See* Mother's Brief at 17; N.T. Termination at 22-23, 27-28, 48-50. Based on our review, however, the record clearly belies Mother's bald assertions.

Contrary to Mother's claim that she completed the PCE, Ms. Muhammad testified that, in September of 2016, Mother had completed *only the first half* of her PCE, before she fled with Child D.F. and Child D.H.F., while under court

supervision, to live in Virginia.[5]  N.T. Termination at 11-12.  To date, Mother

has never completed the PCE.  **Id.** at 11.  Moreover,

> Ms. Muhammed testified Mother had not reached other SCP
> objectives.  Specifically, Mother was unemployed, did not obtain
> adequate housing and missed visits with the Children.  Mother's
> testimony indicated that her employment was sporadic and that
> she had not found suitable housing for her and her Children.
> Mother testified that she was self-employed but did not describe
> her occupation and testified that she missed visits due to a work
> injury.

TCO at 6 (citations to record omitted).[6]

The trial court found the testimony of the CUA representatives to be

credible and accorded it great weight.  **Id.**  To the contrary, the court did not

find Appellant's testimony to be credible.  N.T. Termination at 90.   Based on

the testimony at the termination hearing, as well as the documents entered

---

[5]  The trial court explained:

> [DHS] did not learn the whereabouts of Mother and Children D.F.
> and D.H.F. until August [of] 2017.  The record indicated that
> Mother refused to provide information about her whereabouts to
> DHS.  During this time, Child D.O. lived with grandparents in
> Philadelphia.  During the hearing, Mother testified that she
> absconded with Child D.F. and Child D.H.F. because a paramour's
> father, a DHS employee, threatened to take all of her children.
> Ms[.] Muhammed subsequently testified that this matter was
> made known to DHS by Mother and that the conflict had been
> resolved in September [of] 2016[,] but that Mother did not return
> with D.H.F. and D.F. until August [of] 2017.

TCO at 6 (citations to record omitted).

[6] Trish Kinkle, another assigned CUA Representative, also testified that Mother
failed to meet her SCP objectives. Specifically, she noted Mother failed to
obtain employment and housing, and that she failed to complete "family
school." **Id.** at 7.

into evidence, the trial court concluded that there was clear and convincing evidence to terminate Mother's parental rights under Section 2511(a)(1). We deem the trial court's determinations to be supported by sufficient, competent evidence in the record.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to reviewing whether the requirements of subsection (b) are met. **See In re Adoption of C.L.G.**, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). **Id.** at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." **In re K.M.**, 53 A.3d 781, 791 (Pa. Super. 2012). In **In re E.M.**, [620 A.2d 481, 485 (Pa. 1992)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. **In re K.M.**, 53 A.3d at 791.

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013).

Here, Mother argues that to sever her bond with her children would cause irreparable harm. Mother's Brief at 20. At the termination hearing, Mother asserted that she "just want[s] to be given a chance to prove … [she's]

worthy of being … a parent." N.T. Termination at 69. Mother also expressed that she loves her children and that she should be given a chance to prove to them that she is "worth it." *Id.* at 68-69. We have previously stated: "Above all else … adequate consideration must be given to the needs and welfare of the child. A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citing *In re L.M.*, 923 A.2d at 512) (internal quotation marks and citation omitted)).

Moreover, Ms. Visco, as GAL, stated her opinion that "the children's best interest[s] would be best met by staying with paternal grandmother, who has been a constant resource for them and has taken care of them. All the children are together there, and there would be no detrimental harm to them if [Mother's] rights were terminated." N.T. Termination at 84. Ms. Stewart, Children's advocate, agreed and added "these children have been in a state of instability going back almost four years, since December of 2013, and … it would be in their best interest to have [Mother's] rights terminated, so that they can have stability and permanency." *Id.*

The trial court also recognized that a bond exists between Children and their paternal grandmother and that the paternal grandmother is the person providing Children with their basic needs. TCO at 7. It stated from the bench:

> I have to look at the general factors which indicate what's in the best interest of the children…. [O]ne of the general factors is the character and the fitness of the parties. I find that the character of [Mother] … is lacking. [Her] fitness is lacking. The housing is lacking.

- 11 -

…

>The ability to adequately care for the child is another general factor that has to be considered when considering the best interest of the child, and neither [F]ather [] nor [M]other has the ability to adequately care for these children at this time.
>
>And, even by [M]other's own testimony, she doesn't have the financial wherewithal … needed to provide for [Children].
>
>In fact, the person providing all those needs [−] the housing and the financial, the medical needs of the children – are being performed by the paternal grandmother.
>
>And, specifically, the parental duties of these three children … the everyday parental duties are being performed by one person, and that is paternal grandmother in this case, and those considerations are given great weight by this [c]ourt….

N.T. Termination at 92-93. Finally, the court acknowledged that, "[a]lthough Mother loved her Children, her judgment was poor in that by absconding with Child D.F. and Child D.H.F.[,] she created additional instability." TCO at 7. Consequently, the court concluded that termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(b) would not have a detrimental effect on Children and that it is in Children's best interests. *Id.* at 8.

As there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding Children's needs and welfare, and the absence of any bond with Mother, we conclude that the court did not abuse its discretion as to section 2511(b). *See S.P.*, 47 A.3d at 826-27. Accordingly, we affirm the trial court's decrees terminating Mother's parental rights to Children.

Decrees affirmed.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/18